```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| KIM WOLPERT, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 08-4849 (JBS/KMW) |
| v. | |
| ABBOTT LABORATORIES, | **MEMORANDUM OPINION** |
| Defendant. | |

**SIMANDLE,** Chief Judge:

    This matter is before the Court upon three motions in limine filed by Plaintiff, seeking to exclude certain evidence at trial and seeking an instruction for the jury regarding the nature of her discharge.  [Docket Items 127, 128, & 129.]  THIS COURT FINDS AS FOLLOWS:

    1.  Plaintiff Kim Wolpert is a former employee of Defendant Abbott Laboratories.  The bulk of this litigation focused on her claim that she was improperly discharged from Abbott because she was a pregnant woman.  However, this Court held that Defendant was entitled to summary judgment on that claim because the undisputed facts of record indicated that Defendant's decision to include Plaintiff in the 2007 reduction in force was unrelated to her sex, pregnancy or maternity leave.  What remains is a related but independent claim that a different division of Abbott failed to hire Plaintiff because of her pregnancy or gender in violation of the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1.

2. On August 16, 2007, Wolpert – who was eight months pregnant – applied for an open sales position in Philadelphia. Charles Berry was the Regional Manager for Abbott Vascular responsible for filling the position. Three employees including Wolpert were considered for the position. Berry ultimately hired Jim DiIulio.

3. Defendant seeks to introduce 11 documents that disclose that Berry previously hired female employees and permitted them to take maternity leave. The documents were not disclosed in Rule 26(a) disclosures or in response to generic document requests. Plaintiff seeks an order precluding the late introduction of the documents. [Docket Item 127.]

4. The evidence regarding Berry's hiring practices both before and after the hiring decision in this case is highly relevant. See Ansell v. Green Acres Contracting Co., 347 F.3d 515, 523 (3d Cir. 2003). The prejudice to Plaintiff of permitting the late inclusion of this evidence can be fully cured by permitting the limited deposition of Berry as to the documents and his hiring of female applicants, in order to prepare for his anticipated trial testimony. Since there is no danger of disruption of the proceedings and no clear showing of bad faith – especially in light of the fact that both sides focused nearly exclusively on the discharge claim – exclusion of the evidence is not warranted. See In re TMI Litigation, 193 F.3d 613, 721-22 (3d Cir. 1999). Consequently, the Court will deny the motion as to the hiring practices evidence, but permit Plaintiff the opportunity to depose Mr. Berry, by telephone if desired.

5. The exhibits regarding Berry's compliance with maternity leave requirements are less clearly relevant. Permitting maternity leave is not the kind of discretionary decision that makes for easy comparison to hiring practices, as the law requiring recognition of maternity leave is well-established and a supervisor's affirmative compliance with such requirements is not particularly noteworthy or probative. Further diminishing the relevance to Defendant's primary defense, Berry has testified he was not aware of Plaintiff's pregnancy, so her maternity status would have played no role in his decision, if his testimony is believed. Given that the maternity leave evidence is so marginally relevant, in the context of its late production, its exclusion is warranted.

6. Defendant intends to call Charles Berry to testify regarding DiIulio's performance since being hired. Plaintiff contends such testimony is irrelevant, reasoning that evidence that did not exist at the time the challenged employment decision is made is not relevant under Fed. R. Evid. 401 because it could not have motivated the employer's decision. [Docket Item 128.]

7. It is true that this testimony is irrelevant to Berry's hiring decision, since Berry did not know how well DiIulio would perform. See Price Waterhouse v. Hopkins, 490 U.S. 228, 252 (1989). However, Plaintiff's theory of economic damages makes the testimony relevant. Plaintiff measures her damages, not unreasonably, based on the income received by DiIulio after he was selected for the position. Plaintiff's damages theory therefore turns on whether she would have had the same level of performance-based pay as DiIlulio, which will

present an issue for the jury to decide.  The motion to exclude evidence about DiIulio's post-hiring performance will therefore be denied to the extent the evidence is introduced to dispute Plaintiff's damages claim.

    8.  Finally, Plaintiff moves for an instruction that she was fired as a result of Defendant's error, to avoid any inference by the jury that she was terminated for cause or performance reasons. [Docket Item 129.]  Defendant correctly contends that this would introduce more problems that it would solve, and therefore the motion will be denied as stated.  The Court notes, however, that the parties have agreed to a stipulation to achieve the same result Plaintiff sought, agreeing on language stating that "Plaintiff's employment ended due to a reduction in force in which she was selected for the reduction for reasons that were not based upon her performance."

    9.  The accompanying Order will be entered.


**March 5, 2012**             **s/ Jerome B. Simandle**
Date                          JEROME B. SIMANDLE
                               Chief U.S. District Judge