IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                               :
KIM WOLPERT,                   :
                               :
            Plaintiff,         :          Civil Action
                               :          No. 08-4849 (JBS/KMW)
      v.                       :
                               :
ABBOTT LABORATORIES,           :          OPINION
                               :
            Defendant.         :
_____:
```

APPEARANCES:

Bruce P. McMoran, Esq.
Michael Francis O'Connor, Esq.
Douglas Schulyer Bramley, Esq.
MCMORAN O'CONNOR & BRAMLEY
2399 Highway 34, Building D, Suite D-1
Manasquan, NJ 08736
      Counsel for Plaintiff

Jeffrey P. Catenacci, Esq.
James S. Richter, Esq.
WINSTON & STRAWN LLP
The Legal Center
One Riverfront Plaza, 7th Floor
Newark, NJ 07102
      -and-
Joseph J. Torres, Esq.
Aviva Grumet-Morris, Esq.
Cardelle B. Spangler, Esq.
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
      Counsel for Defendant


**SIMANDLE**, Chief Judge:

I.   **INTRODUCTION**

This matter is before the Court on five motions in limine

filed by Defendant [Docket Items 154-158], a motion in limine

filed by Plaintiff [Docket Item 153], and a motion to bifurcate the trial filed by Defendant [Docket Item 159].

## II.   BACKGROUND

Plaintiff Kim Wolpert is a former employee of Defendant Abbott Laboratories.  The bulk of this litigation focused on her claim that she was improperly discharged from Abbott because she was a pregnant woman.  However, this Court held that Defendant was entitled to summary judgment on that claim because the undisputed facts of record indicated that Defendant's decision to include Plaintiff in the 2007 reduction in force was unrelated to her sex, pregnancy or maternity leave.  What remains is a related but independent claim that a different division of Abbott failed to hire Plaintiff because of her pregnancy or gender in violation of the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1.

According to the evidence adduced on summary judgment, Plaintiff Kim Wolpert began her employment at Abbott Vascular in October of 2005 as a sales representative in the Endovascular group.  Wolpert v. Abbott Laboratories, 817 F. Supp. 2d 424, 427 (D.N.J. Sept. 12, 2011) ("Wolpert I").  In early 2007, Plaintiff informed her supervisor, Bryan Finley, that she was pregnant, and he mentioned this news in internal e-mails.  On more than one occasion thereafter, Finley's manager, Area Director Bruce

Tamargo, asked Finley whether Finley thought Plaintiff would return to work after her anticipated maternity leave.  In the summer of 2007, Plaintiff began reporting to a new manager, Richard Collins.  Id.

On August 14, 2007, Plaintiff received an email encouraging her and other salespeople to apply for open sales positions in the Cardiac Therapies group.  One such open position, which was located in Philadelphia, would report to Charles Berry. Plaintiff applied for the position by submitting her resume to the HR employee who sent out the notice.  Plaintiff was one of three internal candidates to interview for the position; the other two applicants were men.  Id.

There is a dispute of fact over whether Plaintiff telephoned Berry to indicate she was applying for the position.  Berry testified that Wolpert had a short telephone conversation with him regarding the position, in which she indicated that she had little interest in the position and was only applying for it because her manager suggested she do so.  Plaintiff denies having any direct contact with Berry prior to her interview itself.  Id.

Berry scheduled interviews with all three candidates who had applied, scheduling Plaintiff for a 30-minute telephone interview first, and then scheduling the other two male candidates for hour-long in-person interviews which were attended by both Berry and his superior, the Area Director of the group.  Berry selected

one of the male candidates for the position, Mr. DiIulio.  Berry testified that he made his selection on the basis of the perceived interest of the candidates in the position, and that he sensed from Plaintiff little interest both in the pre-interview conversation and in the telephone interview itself.  Id. at 428.

Berry denies that he was aware in August of 2007 that Plaintiff was pregnant.  Plaintiff testified that Berry was aware of her pregnancy because he had seen her in person in the later months of her pregnancy, when she was visibly pregnant.  Id.

Defendant now moves to exclude the following evidence: emails and testimony demonstrating Plaintiff's co-workers' knowledge of her pregnancy; evidence of Plaintiff's qualifications for the position; certain deposition testimony of Plaintiff's supervisor; and Plaintiff's testimony that she experienced emotional distress as a consequence of the failure to hire.  Defendant also moves to strike Plaintiff's claim for front pay and to bifurcate trial to separate the punitive damages phase.  Plaintiff moves to introduce evidence of her performance in her new job even though it is not identified in the Joint Final Pretrial Order, and seeks to further divide the trial between liability and compensatory damages.

4

III. DISCUSSION

   A.  Motion to Exclude Evidence of Non-Decisionmakers'
      Knowledge of Pregnancy (Def.'s Motion in Limine #1)

     To prove discrimination, Plaintiff must show that the
decisionmaker, Charles Berry, knew about her pregnancy.  See
Kenney v. Ultradent Prods., Inc., No. 05-1851, 2007 WL 2264851,
at *4 (D.N.J. Aug. 6, 2007).  In addition to contending that
Berry learned of the pregnancy by seeing Plaintiff when she was
visibly pregnant, Plaintiff contends that her co-workers
including her direct supervisors knew of her pregnancy and likely
would have told Berry based on the general context of a business
in which Berry was considering Plaintiff's candidacy for another
position.  Defendant argues that the inference that Berry learned
of the pregnancy from one of Plaintiff's co-workers is overly
speculative, and that therefore the co-workers' knowledge of the
pregnancy is irrelevant and should be excluded under Federal
Rules of Evidence 401 and 402.

     Defendant's argument conflates relevance with sufficiency.
Evidence can be relevant to a proposition without being
sufficient to establish it.  Cf. United States v. Clifford, 704
F.2d 86, 90 (3d Cir. 1983) (noting the distinction between
relevancy and sufficiency); Fed. R. Evid. 401, advisory committee
notes.  To prove that the widespread knowledge of Plaintiff's
pregnancy within the organization is irrelevant, Defendant must

show that this evidence does not have any tendency to make the fact that Berry knew of Plaintiff's pregnancy "more probable." See Fed. R. Evid. 401(a).

That Plaintiff's co-workers, including her direct supervisors, knew of her pregnancy indisputably makes it more probable that they told Berry.  The co-workers' knowledge suggests that Plaintiff was not hiding her pregnancy; to the extent the others learned from seeing Plaintiff, it suggests she was showing which is relevant to the parties' dispute over Berry having learned from seeing Plaintiff; and it greatly increases the chances that Berry learned of the pregnancy by seeing one of the emails about it, by overhearing a conversation, or by having been told by someone.

In examining relevance, the Court is not called upon to quantify the evidence's probative force.  The weight of evidence is a question for the jury.  See, e.g., United States v. Starnes, 583 F.3d 196, 214 (3d Cir. 2009).  And questions about whether evidence is sufficient to reasonably meet a burden of persuasion are questions of evidentiary sufficiency, not relevance.  The change in probability of the ultimate fact necessary to make evidence relevant may be quite minuscule; so long as it makes the fact more or less probable as compared to the scenario in the absence of such evidence, it is relevant.  See Fed. R. Evid. 401(a), advisory committee's note ("Any more stringent

requirement is unworkable and unrealistic. . . . Dealing with probability in the language of the rule has the added virtue of avoiding confusion between questions of admissibility and questions of the sufficiency of the evidence."); cf. United States v. Casares-Cardenas, 14 F.3d 1283, 1287 (8th Cir. 1994) ("Relevance is established by any showing, however slight, that makes it more or less likely that the defendant committed the crime in question.").[1]

Defendant does not contend that the evidence's minimal probative force means it is outweighed by some prejudice or cost in terms of time or resources – factors that might otherwise set a minimal threshold for probative force before evidence is to be admitted.  See 1 McCormick On Evid. § 185 n.16 (6th ed.) (noting although Rule 401 sets no minimum threshold of probative force, Rules 403 or 404 might effectively do so).  And there is no sua sponte obligation to consider Rules 403 or 404.  See United

---

[1]  This motion does not present a problem of "conditional relevance."  See Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.").  Conditional relevance analysis is called for when the condition and the conditionally relevant evidence are independent, and thus the conditionally relevant evidence is truly irrelevant in the absence of proof of the condition.  If the evidence has the tendency of making the putative condition more probable, then the evidence on its own has the tendency of making the ultimate proposition more or less probable.  The proposition that the co-workers told Berry is made more probable by the fact that the co-workers knew of the pregnancy, and so the evidence is not properly analyzed under Fed. R. Evid. 104(b).

States v. Long, 574 F.2d 761, 766 (3d Cir. 1978) (explaining that objections under Rules 403 and 404 must be specifically made in order to be considered).[2]

In sum, Plaintiff's co-workers' knowledge of her pregnancy makes more probable the fact that Berry learned of her pregnancy. It is therefore relevant. Relevant evidence is admissible in the absence of any countervailing factors of undue prejudice or consumption of time compared with the probative value of the evidence, neither of which are identified by Defendant. Therefore, the evidence is admissible, regardless of whether it is sufficient for judgment on a preponderance of the evidence. If there is too large a gap between the sum total of the relevant evidence and a judgment about some ultimate fact so as to make

---

[2] To the extent Rules 403 or 404 require some threshold of probative force to merit the jury's attention and the Court's time even when no specific prejudice is shown, such a threshold of probative force would be met here. This evidence of knowledge is at least close to sufficiency for judgment (a question on which this Court does not rule), and therefore vastly exceeds whatever minimal threshold might be required for admissibility. The Court of Appeals has not held that a jury "may never infer knowledge on the part of an employer when the employee proffers evidence that the information was generally known to co-workers." See Stephens v. Kerrigan, 122 F.3d 171, 177 (3d Cir. 1997). Instead, the precedent contains examples of when far less evidence was insufficient, and when slightly more evidence was sufficient. Compare Geraci v. Moody-Tottrup, Int'l, 82 F.3d 578, 580-82 (3d Cir. 1996) (holding that co-workers' knowledge was insufficient when the plaintiff asked her co-workers not to tell the managers, and it was "undisputed that [the manager] decided to lay [the plaintiff] off in mid-December, before [the plaintiff] herself knew she was pregnant") with Stephens, 122 F.3d at 177 (finding in addition to co-worker knowledge that there was an "information pipeline").

the connection overly speculative, then a party can challenge the
sufficiency of the evidence to meet a given burden of persuasion
at the close of a plaintiff's case by making a motion pursuant to
Rule 50, not as a motion in limine.  This motion in limine will
be denied.

### B.  Motion to Exclude Evidence of Plaintiff's Qualifications (Def.'s Motion in Limine #2)

Plaintiff seeks to introduce evidence of her qualifications
for the position that she was denied.  She contends that the
evidence is relevant to proving at trial that she was
discriminated against on the basis of her pregnancy.  Defendant
contends that evidence of Plaintiff's qualifications is
irrelevant to establishing discriminatory motivation.  But this
second motion in limine suffers from a similar category error as
the first, advancing arguments relevant to summary judgment but
not relevant to admissibility of evidence at trial.  Because the
evidence is relevant for multiple reasons and Defendant
identifies no undue prejudice, it is admissible.

Defendant relies on precedent addressing the burdens of
production on a motion for summary judgment, discussing when a
plaintiff has produced sufficient evidence that a jury could find
the defendant's valid reason for the employment decision to be
pretextual.  The cases hold that an employer's valid reason for
the employment decision is not rebutted by evidence of

qualifications not relied upon by the employer.  See Simpson v.
Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 647 (3d Cir.
1998) (noting that to prove pretext, "the plaintiff must point to
evidence from which a factfinder could reasonably infer that the
plaintiff satisfied the criterion identified by the employer or
that the employer did not actually rely upon the stated
criterion"); Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d
509, 529 (3d Cir. 1992) (holding that rebuttal of pretext must
occur through comparison of the plaintiff's ability in the
category deemed dispositive by the decisionmaker, or evidence
showing that the decision was more likely motivated by a
discriminatory reason than the stated pretext).  In such a
scenario, a defendant can prevail on a motion for summary
judgment because the precedent holds that a reasonable jury
cannot find discrimination without having some reason to doubt
the defendant's proffered valid reason for the employment
decision.

     But this precedent has little to do with the admissibility
of evidence at trial.  Whether or not qualification evidence is
sufficient to entitle Plaintiff to summary judgment, it is
relevant at trial because it is the epitome of evidence that
makes a finding of discrimination more probable.  It forms part
of a plaintiff's prima facie case on summary judgment precisely
because it is exactly the kind of evidence that makes

discrimination a more probable conclusion.  <u>See</u> <u>Fuentes v.</u>
<u>Perskie</u>, 3 F.3d 759, 763 (3d Cir. 1994) (noting requirement of
qualification for the position); <u>Ezold</u>, 983 F.2d at 523 (noting
that  qualification evidence in question was relevant and
sufficient to prove qualifications, even though it did not rebut
the defendant's pretext).  At trial, the issue is no longer the
burdens of production – such burdens have either been met or were
never tested; instead, the focus is Plaintiff's burden of
persuasion to show by a preponderance of the evidence that the
determinative factor for the failure to hire was her pregnancy.
Qualification for the position makes it more probable that the
failure to hire is discriminatory as compared to the scenario in
which the person is not qualified, regardless of whether the
employer offers some non-qualification basis for the employment
decision.  This is true, among other reasons, because even if the
jury disbelieves Defendant's proffered reason for the decision,
the jury must still determine that the real basis for the
decision was discriminatory motive.  <u>See</u> <u>Smith v. Borough of</u>
<u>Wilkinsburg</u>, 147 F.3d 272, 280 (3d Cir. 1998) (explaining what a
jury is to consider at trial).

    In any case, the qualification evidence at issue in this
case is also relevant to pretext.  The most contemporaneous
evidence of the basis for the failure to hire is the human
resources form that provided that the "reason for no interest" in

11

Plaintiff for the position was her "knowledge/skills/abilities."
Pl.'s Ex. 70.  The fact that the initial justification does not
apply to Plaintiff is relevant to the determination of whether
this document was an innocent mistake or Defendant discarded that
initial basis upon the realization that this putative basis for
the decision would not stand up to scrutiny, as Plaintiff
contends.

Defendant does not dispute that Plaintiff was qualified for
the position, but that does not make the evidence irrelevant.
First, Defendant cannot make some fact inadmissible merely by
offering to stipulate to it.  See United States v. Sampson, 980
F.2d 883, 888 (3d Cir. 1992) ("Issues are not irrelevant just
because the defense's theory presupposes them to be so.").  And
second, Defendant does not concede either of the ultimate
propositions for which the evidence is relevant: that the
decision was made for discriminatory reasons, and that the
initially proffered basis for the reason was false, suggesting
pretext.  Perhaps there are scenarios in which the Court would
mandate that a plaintiff's qualification for the position come in
as a stipulated jury instruction, as when the presentation of the
evidence would be more prejudicial than probative.  But although
Defendant uses the word "prejudicial," Defendant never actually
makes an argument for prejudice, so the Court need not weigh the
probative value of the evidence against its prejudicial value.

This motion will therefore be denied.

**C.  Motion to Exclude Portions of Collins's Testimony (Def.'s Motion in Limine #3)**

Plaintiff has designated fourteen sections of the deposition testimony of Richard Collins, her direct supervisor when she applied for the coronary position, for introduction into evidence at trial pursuant to Rule 32(a), Fed. R. Civ. P.  Defendant contends that all of this testimony is either irrelevant or hearsay.

1.  <u>Testimony Relating to Termination</u>

Plaintiff originally designated several sections of Collins's deposition relating to her termination for introduction at trial.  Because of this Court's earlier decision to exclude evidence relating to the termination, Plaintiff does not oppose exclusion of three of these sections: 56:12-15; 57:18-58:16; and 76:22-78:7.  And the Court will therefore order them to be excluded.

Plaintiff does not address the testimony at 75:7-9, in which Collins relates that he remembers Plaintiff doing a good job, which Defendant sought to exclude.  But the basis for exclusion is meritless.  Defendant contends that Plaintiff would also have to introduce the broader context of the question which asks about a conversation related to the reduction in force.  But there is

13

no reason why the designated section cannot come in from 75:7 to 9, none of which references the reduction in force.[3]  The meaning of the testimony is not enhanced by knowing that the broader line of questioning involved Collins recalling Plaintiff's hard work in the context of whether he told others about her work when the reduction in force was happening.

Defendant also originally identified an excerpt from 104:7-108:14 for exclusion, but this was based on the mistaken belief that the passage mentioned Collins being summoned to Atlanta for reasons related to the reduction in force.  It does not mention that, and Defendant does not argue for its exclusion in Defendant's reply.

    2.  <u>Testimony Relating to Pregnancy</u>

Defendant contends that three sections of testimony about knowledge of Plaintiff's pregnancy should be excluded for the same reasons outlined in Defendant's first motion in limine regarding the knowledge of non-decisionmakers concerning Plaintiff's pregnancy.  Since that motion will be denied, this aspect of this motion will be denied for the same reason.

    3.  <u>Testimony Relating to Qualifications</u>

---

[3]  The section would read: "I remember Kim doing a great job, I remember Kim working very hard right up through her leave."

14

Defendant argues that a section of Collins's testimony in which Collins addresses Plaintiff's sales ranking in September 2007 is inadmissible because it is irrelevant and lacks foundation.  <u>See</u> Collins Dep. at 116:16-23.[4]  At the hearing for argument on the motion, Plaintiff conceded that the evidence is irrelevant, and it will therefore be excluded.

    4. <u>Testimony Relating to the Amended Complaint</u>

Plaintiff purports to seek to admit portions of Collins's testimony that respond to questions about the allegations in specific paragraphs of the Amended Complaint.  Plaintiff therefore seeks to introduce the section of the deposition that describes the initial introduction of the Amended Complaint (67:7-25).  Defendant objects, arguing that such testimony is hearsay and irrelevant.

The deposition section at 75:7-9 makes no reference to the Amended Complaint; even though the preceding question does, as discussed earlier, it can be admitted without the section addressing the origin of the question.

The only section that actually includes reference to the Amended Complaint is 78:21-79:20, which asks Collins to "take a

---

    [4]  "Q. So you knew, did you not, that Ms. Wolpert was one of the top sales reps in your region in September of 2007? MR. TORRES: Objection to the form of the question. THE WITNESS: Based on rankings here, yes, she is listed at second highest in the region."

look then at paragraphs 36 through 42" and then asks "Having
reviewed this, is this anything you're familiar with, Ms. Wolpert
trying to attain this position in south Philadelphia?," which
Collins proceeds to answer without reference to the pleading.
78:21-79:20.  This section can be admitted starting with "[Are
you] familiar with Ms. Wolpert trying to attain this position in
south Philadelphia?"  This avoids any reference to the Amended
Complaint without materially altering the content.  Since the
jury should not be given the Amended Complaint, this is the best
balance to avoid jury confusion or prejudice.  With this change,
67:7-25 is not otherwise relevant or helpful, and should be
excluded, and so the motion will be granted with respect to this
issue.

> 5.  <u>Testimony Relating to Region, Reporting Structure,
> and Resignation</u>

Plaintiff seeks to introduce three sections of Collins's
testimony relating to the region for which he was responsible
including his supervision of Plaintiff (12:1-14:13), to whom he
reported (16:14-17:13), and that he resigned from the company
because of another opportunity (18:13-19).  Defendant argues that
the testimony is irrelevant.  Plaintiff contends that this
testimony is relevant to show that Collins supervised Plaintiff,
and that his resignation goes to his credibility and lack of
bias, as otherwise the jury will be left to speculate as to why

Collins no longer works for Abbott.  In reply, Defendant contends that since none of Collins's testimony is admissible, there is no need to hear about Collins's background.

The argument that Defendant is ultimately reduced to, that this is irrelevant because the rest of Collins's testimony will be excluded, is incorrect since the Court will permit most of the deposition to come in.  And, in any case, Plaintiff is correct that the testimony is relevant to establish that Collins was Plaintiff's supervisor and to briefly explain Collins's position in the organizational structure.  And the Court agrees that the reason for Collins's departure is useful to avoid jury speculation that he is disgruntled.  This aspect of the motion will therefore be denied.

6.  <u>Testimony Relating to Coronary Position</u>

Plaintiff intends to introduce the section of deposition testimony in which Collins testifies as follows: "I remember her letting me know she wanted to interview for this job. And I said. [sic] 'Kim, go ahead if that's what you want to do.'" 79:5-7. Plaintiff wants to use this testimony to counter Defendant's position that she told Berry she was uninterested in the job. Defendant contends that both statements are inadmissible hearsay under Rule 802, Fed. R. Evid.

The latter statement recounting Collins's own prior

17

statement is admissible as a party admission.  <u>See</u> Fed. R. Evid. 801(d)(2).  Defendant does not contend that Collins does not count as an adverse party for the purposes of 801(d)(2). Defendant's only contention in reply is that it is unclear why this statement is relevant.  But the relevance is obvious: it suggests Plaintiff expressed an interested in the position (the phrase "if that's what you want to do" suggests she had expressed a desire to do it), which is relevant to a key fact in dispute in this case, namely, Plaintiff's interest in the position.

The recollection of Plaintiff's statement is admissible under Fed. R. Evid. 801(d)(1) for the purpose of rebutting Defendant's inevitable challenge to Plaintiff's testimony that she was interested in the job.  Defendant offers only the self-evidently incorrect contention that "Collins's statement that Plaintiff 'wanted' the job says nothing about her interest level."  The testimony does not definitively rule out her wanting to interview for reasons other than a desire to have the job, nor does it precisely quantify how much she wanted the job.  But it is nevertheless highly relevant to those questions, since it suggests that she approached Collins about her desire to interview before knowing what Collins's desire was.  The motion as to this point will therefore be denied.

18

**D.  Motion to Exclude Evidence of Emotional Distress (Def.'s Motion in Limine  #4)**

Plaintiff was asked in her deposition about her general claim for damages because of severe emotional distress in paragraph 47 of the Amended Complaint.  Wolpert Dep. 123:18-25; 126: 25; 127: 1.  She was asked, "[C]an you explain to me the emotional distress that you experienced as a result of this alleged conduct?"  Plaintiff responded exclusively about her distress as a consequence of her termination, without making reference to the failure to hire her for the coronary position. When asked "who specifically engaged in the conduct that caused you to suffer severe emotional distress?" Plaintiff responded, "Abbott.  Jean Munson."  To the follow-up, "Anyone else?" Plaintiff replied, "And the people that made the decision to fire me."  And to a further, "anyone else?" she replied "All of the decision-makers."  When asked "what decision-makers?" she replied "People who made the decision to terminate me."  Id. at 131:7-150-14.

A reasonable reading of these answers is that Plaintiff did not experience emotional distress from the failure to hire.  But there is also merit to Plaintiff's contention that the entire context of the deposition was focus on the termination claim, and that in the absence of any questions about the failure to hire, Plaintiff could reasonably have answered in the way that she did despite also believing that she experienced emotional distress as

a consequence of the failure to hire.  Because different
reasonable inferences can be drawn from the deposition, testimony
of this sort is given to the jury to determine the credibility of
Plaintiff's assertions at trial.  See Gallick v. Baltimore & O.
R. Co., 372 U.S. 108, 115 (1963) ("The very essence of [the
jury's] function is to select from among conflicting inferences
and conclusions that which it considers most reasonable.").

But Defendant does not want to use the prior inconsistent
statement merely to impeach Plaintiff.  Defendant seeks to forbid
Plaintiff from testifying as to her emotional distress
altogether.  Defendant contends that the deposition cannot be
used to impeach her because it would reveal the fact of her
termination, and the parties have agreed to exclude discussion of
the termination.  Therefore, Defendant reasons, the only solution
is to forbid Plaintiff from testifying.

But this is a pickle of Defendant's own making from which
the Court cannot extricate it.  If Defendant wishes to introduce
evidence that will reveal Plaintiff's termination, in order to
impeach Plaintiff, then Defendant should not have stipulated not
to introduce such evidence.  There is no legal basis for the
Court to forbid Plaintiff from testifying as to one of the
central aspects of her case because Defendant has stipulated not
to introduce a key piece of evidence that Defendant could use to
impugn her credibility.  This aspect of the motion will therefore

20

be denied.

**E.  Motion to Exclude Evidence or Strike Claim for Front Pay (Def.'s Motion in Limine #5)**

Defendant moves to strike Plaintiff's claim for front pay because Plaintiff's earnings now exceed those of the individual hired for the coronary position.  Plaintiff consents to striking the claim for front pay from the Amended Complaint, and so the motion will be granted.

**F.  Motion to Bifurcate**

1.  <u>Bifurcation (Compensatory Damages/Punitive Damages)</u>

Defendant moves to bifurcate the trial of this matter such that proof of punitive damages liability and quantity will be held in a second phase, if the jury finds liability and awards compensatory damages in the first phase.  Plaintiff consents to this motion.  Bifurcation would be compelled in a New Jersey court.  <u>See</u> N.J. Stat. Ann. § 2A:15-5.13(a) ("Any actions involving punitive damages shall, if requested by any defendant, be conducted in a bifurcated trial.").  And New Jersey's punitive damages statute arguably constitutes the substantive law of this diversity case.  Certainly parts of it do.  <u>See</u> <u>Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.</u>, 181 F.3d 446, 464 (3d Cir. 1999) ("[S]tate law governs the propriety of awarding punitive damages and the factors to be considered in determining the

21

amount.") (citing <u>Browning-Ferris Indus., Inc. v. Kelco Disposal, Inc.</u>, 492 U.S. 257, 279 (1989); <u>see also</u> <u>Inter Med. Supplies Ltd. v. EBI Med. Sys., Inc.</u>, 975 F. Supp. 681, 698 (D.N.J. 1997) aff'd and remanded, 181 F.3d 446 (3d Cir. 1999) (finding that another part of New Jersey's punitive damages statute constituted substantive law because "the review mandated by New Jersey's Punitive Damages Act would undoubtedly 'have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court.'") (quoting <u>Hanna v. Plumer</u>, 380 U.S. 460, 468 n. 9 (1965)).[5]

While there may remain some doubt about whether bifurcation has "so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court," <u>Hanna</u>, 380 U.S. at 468 n. 9, given the agreement between the parties that this is the best way to proceed, and the Court seeing no significant loss in efficiency by doing so, the Court will order bifurcation.

---

[5] This Court has applied the punitive damages bifurcation statute in a similar case. <u>See</u> <u>Bowers v. Nat'l Collegiate Athletic Ass'n</u>, No. 97-2600, 2008 WL 2235604, at *1 (D.N.J. May 29, 2008) (applying N.J. Stat. Ann. § 2A:15-5.13(a) in diversity action).

2.   <u>Trifurcation (Liability/Compensatory Damages/Punitive Damages)</u>

Plaintiff seeks to further divide the trial between liability and damages.  Since the evidence of Plaintiff and DiIulio's performance after the hiring decision can only be used for damages purposes and not liability, Plaintiff requests that the Court trifurcate the trial to avoid prejudice from the jury considering evidence of Plaintiff and DiIulio's post-hiring performance as relevant to liability.

Defendant correctly contends that Plaintiff's motion is procedurally improper because it is raised in a response brief. <u>See</u> L.Civ.R. 7.1.  The motion also fails to persuade the Court that further division of the trial is necessary to "avoid prejudice, or to expedite and economize." <u>See</u> Fed. R. Civ. P. 42(b).  General liability and compensatory damages are greatly overlapping and difficult to disentangle in this case, as Berry and Plaintiff's testimony will be key to both.

Given the relatively straightforward issues in this case, the Court is satisfied that it is sufficient to avoid jury confusion to instruct the jury that Plaintiff and DiIulio's performance after the hiring decision is not relevant to liability because Berry did not know how the parties would perform in the new position when making the hiring decision.

**G.  Motion to Allow Evidence of Plaintiff's Performance After Failure to Hire**

Plaintiff seeks to introduce documents from her current employer demonstrating her good job performance after she was denied the position with Abbott.  She seeks to prove that she would have performed as well, if not better, than Mr. DiIulio since she bases her damages on his performance-based pay.  These documents were not identified in the Joint Final Pretrial Order, and so in order to permit their admission, the Court must find cause to amend that Order.  As explained below, the Court finds that such amendment is warranted, and so the motion will be granted.

1.  <u>Procedural History</u>

A brief review of the procedural history of this case reveals why this is an unusual circumstance warranting the relatively late amendment.  Throughout discovery and dispositive motion practice, the parties inexplicably focused exclusively on Plaintiff's termination claim.  In the wake of this Court's September 12, 2011 grant of summary judgment as to the termination claim, after fact discovery had closed, the parties belatedly turned their attention to the failure to hire claim and realized they had done virtually no discovery on the remaining claim.

At a December 14, 2011 conference, the parties conferred

24

over Plaintiff's theory of damages under the failure to hire
claim.  Plaintiff explained that she would seek as compensation
the difference between DiIulio's pay and her own.[6]  Because the
parties had failed to perform discovery as to this theory, in an
Order of December 14, 2011, Magistrate Judge Williams ordered the
parties to confer regarding the scope of testimony to be
introduced about Jim DiIulio's job performance and compensation.
[Docket Item 115.]  And the Amended Scheduling Order of December
15, 2011 re-opened discovery in the case limited to evidence
regarding damages from the failure to hire claim.  [Docket Item
116.]

        A Joint Final Pretrial Order was entered on December 30,
2011.  However, it was entered in a context in which all sides
were aware that discovery was on-going through January pursuant
to the December 15 Order.  The existing deadline for amendment of
the Order was December 28, 2011, a date implicitly vacated both
by the fact that the Order was not entered until December 30, and
by the subsequent order for additional discovery to be conducted.
In effect, therefore, there was no deadline set for amendment of

_____

        [6]  It was not until December 30, 2011 that Plaintiff
provided amended responses to Defendant's contention
interrogatories, which indicated that her theory of damages was
that she would have earned what DiIulio earned.  But Defendant
was evidently aware of her theory since Defendant claims it was
the impetus behind Judge Williams Order of December 15, 2011.
Def.'s Opp. Br. to Pl.'s Motion to Permit Evidence of Her Post-
Hire Performance 3.

the Pretrial Order in light of the additional discovery ordered.

On December 30, 2011, Abbott served a subpoena on Plaintiff's post-Abbott employer, Spectranetics, and produced to Plaintiff all documents received pursuant to subpoena – some of which are the documents Plaintiff now seeks to introduce at trial.  Plaintiff wrote to Defendant to indicate that Plaintiff intended to argue that the documents were inadmissible because they were not identified on the exhibit list of the Final Pretrial Order (even though that Order was entered prior to the subpoena).

Until now, neither party sought to amend the Pretrial Order to add the documents.  On March 5, 2012, the Court ruled that since Plaintiff measures her damages on the performance-based income received by Mr. DiIulio, Mr. DiIulio's post-hire performance is admissible for the purposes of damages assessment. Putatively as a result of this ruling, Plaintiff now seeks to introduce some of the documents produced by the December 30 subpoena.

### 2.   Amendment of Pretrial Order under Rule 16(e)

Ordinarily, a Joint Final Pretrial Order is not to be amended absent a showing of manifest injustice.  See Rule 16(e), Fed. R. Civ. P.; Scopia Mortg. Corp. v. Greentree Mortg. Co., 184 F.R.D. 526, 528 (D.N.J. 1998).  Here, however, the parties faced

a situation in which all sides contemplated that the Order would be amended, or at least could be amended after the existing deadline of December 28, 2011 because of the discovery conducted in late December and early January.  Since there was no deadline for amendment that still made logical sense, the most that can be argued is that Plaintiff's motion was unreasonably delayed.

But presented with this uncertainty, Defendant's conduct in not vetting the evidence it discovered was also unreasonable. Defendant's only reason to believe Plaintiff would not seek to use the evidence was Plaintiff's threat to exclude it if Defendant tried to introduce it.  But the threat was transparently empty, given the context, since no reasonable party could have taken the December 28 deadline as still operative. And so Defendant's argument that Plaintiff is responsible for Defendant's failure to vet its own evidence is not especially compelling.

The Court must balance Plaintiff's somewhat delayed request to amend the Pretrial Order in the absence of any clear deadline for that amendment, weighed against the unreasonableness of Defendant's reliance on that Order in determining whether to vet these documents.  Neither side has clean hands.  Both sides could and should have obtained these documents and any further necessary discovery about these documents in the first three years of this litigation.  And both sides were aware of the

27

potential relevance of these documents the moment they were
obtained, given Plaintiff's theory of the case.[7]   So the Court
will attempt to minimize the disadvantage caused to both sides by
these circumstances.

The Court finds that Defendant has not shown sufficient
prejudice from the introduction of these documents to warrant
excluding relevant evidence from Plaintiff's case.   Any prejudice
experienced by Defendant was at least partially self-inflicted,
starting with Defendant's failure to include the discovery in the
initial stages of fact discovery and ending with the failure to
seek a deadline for amendment of the Pretrial Order and the
decision not to vet these documents despite the possibility that
Plaintiff may seek to introduce them.   The evidence does not
significantly alter the trial.   Plaintiff was already going to
testify as to her post-hire performance.   And the Court is not
persuaded that Plaintiff has acted willfully or in bad faith, as
opposed to negligently.

In sum, because both sides bear fault for this predicament,
it would more unjust to exclude this evidence than to admit it.

---

[7]   The Court is not persuaded that it was not until the
Court's March 5 Order that Plaintiff realized that she might have
to prove that she would have performed as well as DiIulio.
Plaintiff was aware before December 30, 2011 that Defendant
intended to introduce evidence of DiIulio's performance.   It was
unreasonable for Plaintiff to assume that her damages would be
measured based on DiIulio's performance without any questions
being raised as to whether she would have performed as well as
DiIulio.

Exclusion would permit Defendant to submit evidence of DiIulio's performance but bar Plaintiff from introducing counter-evidence, discovered by Defendant, that her performance would have matched that of DiIulio.  To bar such central evidence to this case would require some genuine prejudice on the part of Defendant, who has not demonstrated any prejudice for which Defendant was not also at fault.  The motion to introduce this evidence and thereby modify the Joint Final Pretrial Order will therefore be granted.


**IV.   CONCLUSION**

Based on the foregoing, the Court will make the following rulings:

(1) Defendant's motion to exclude as irrelevant the evidence of Plaintiff's co-workers' knowledge of her pregnancy will be denied, because the evidence makes more probable the fact that Berry learned of her pregnancy and there is no countervailing basis to exclude it;

(2) Defendant's motion to exclude as irrelevant the evidence of Plaintiff's qualifications will be denied, because the evidence makes more probable the fact that Plaintiff was discriminated against, and there is no countervailing basis to exclude it;

(3) Defendant's motion to exclude portions of Collins's deposition will be granted in part and denied in part as follows:

(a) Sections 56:12-15; 57:18-58:16; and 76:22-78:7 will be excluded;

(b) 75:7-9 will not be excluded;

(c) Sections 81:10-13, 103:14-104:2, and 120:3-23, regarding knowledge of non-decisionmakers concerning

29

Plaintiff's pregnancy will not be excluded;

(d) Section 116:16-23 referring to a document showing Plaintiff's ranking as a salesperson will be excluded;

(e) The section at 67:7-25 will be excluded and the section at 78:21-79:20, if introduced, will be modified to show the question as "[Are you] familiar with Ms. Wolpert trying to attain this position in south Philadelphia?";

(f) the sections relating to Collins's region, supervisory structure, and resignation will not be excluded;

(g) the sections relating to Collins's discussion with Plaintiff regarding the hiring opportunity will not be excluded;

(4) Defendant's motion to exclude Plaintiff's testimony regarding her emotional distress will be denied, because the Court will not forbid Plaintiff from testifying as to one of the central aspects of her case just because Defendant has stipulated not to introduce a key piece of evidence that Defendant could use to impugn her credibility;

(5) Defendant's motion to strike Plaintiff's claim for front pay will be granted because Plaintiff consents to striking the claim for front pay;

(6) Defendant's motion to bifurcate the trial so as to separate the issue of punitive damages from the rest of the trial will be granted, and Plaintiff's cross-motion to trifurcate the trial will be denied;

(7) Plaintiff's motion to introduce evidence of her performance (requiring amendment of the Joint Final Pretrial Order) will be granted because to bar such central evidence to this case would require some genuine prejudice on the part of Defendant, who has not demonstrated any prejudice for which Defendant was not also at fault.

The accompanying Order will be entered.


**May 7, 2012**                          **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         Chief U.S. District Judge